# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISANT CORPORATION; and JOSTENS, INC., <br><br> Plaintiffs, <br> vs. <br> BRET BARRETT; and ECCOMI, INC., d/b/a YB$^2$, <br><br> Defendants. | CASE NO. 13cv389 WQH (WVG) <br><br> **ORDER** |

HAYES, Judge:

The matter before the Court is the "Response and Motion to Dismiss Complaint" ("Motion to Dismiss") filed by Defendant Bret Barrett. (ECF No. 8).

## BACKGROUND

On February 19, 2013, Plaintiffs Visant Corporation ("Visant") and Jostens, Inc. ("Jostens") initiated this action with a Complaint against Defendants Bret Barrett ("Barrett") and Eccomi, Inc., d/b/a YB$^2$ ("YB$^2$"). (ECF No. 1). Plaintiffs allege that Barrett, a former Jostens sales representative who is now president of YB$^2$ (a Jostens competitor), has been targeting existing Jostens' sales representatives with false and defamatory statements about the financial health of Jostens and its parent company, Visant. *Id.* at 2. Plaintiffs assert claims for defamation, trade libel, unfair business practices, and intentional interference with contractual relations and prospective economic advantage.

On February 26, 2013, Barrett, proceeding *pro se*[1], filed the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and California's anti-SLAPP (strategic lawsuit against public participation) statute (Cal. Code Civ. P. § 425.16). (ECF No. 8). On March 21, 2013, Plaintiffs filed an opposition. (ECF No. 12). On April 9, 2013, Barrett filed a reply. (ECF No. 19).

**ALLEGATIONS OF THE COMPLAINT**

"Visant is a leading marketing and publishing services enterprise.... Jostens is a wholly-owned subsidiary of Visant." (ECF No. 1 at ¶¶ 12-13). Jostens manufactures and supplies, *inter alia*, yearbooks to schools, colleges and universities. *See id.* at ¶¶ 13-15. "Jostens' business model for its school yearbooks is built on contracts with independent sales representatives who agree to solicit sales on Jostens' behalf in an assigned territory." *Id.* at ¶ 14.

From approximately 1998 until 2011, Barrett served as a Jostens independent sales representative. "In 2011, Jostens terminated its relationship with Barrett for non-performance. At the time, Barrett owed Jostens more than $200,000 in unreimbursed draw payments, funds that Jostens had advanced to Barrett to assist him in developing and maintaining Jostens' accounts that he had agreed to pay back through commission receipts." *Id.* at ¶ 16.

"[I]n or around the time Jostens terminated Barrett, Barrett became affiliated with YB$^2$, a Jostens competitor engaged in the business of providing services and products in connection with the publication, sale and production of school yearbooks." *Id.* at ¶ 17. Barrett is the president of Eccomi, Inc., which does business under the fictitious business name YB$^2$.

**I.    Defendants' January 26, 2013 e-mail**

On January 26, 2013, Defendants sent a "false and defamatory doomsday

---

[1] As a *pro se* defendant, Barrett cannot represent Defendant Eccomi, Inc., d/b/a YB$^2$ in this action. *See D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004) ("Corporations and other unincorporated associations must appear in court through an attorney.").

analysis of Visant and Jostens to 25 key Jostens independent sales representatives in its memory book segment. The purported analysis, which targeted key Jostens' independent sales representatives responsible for critical Jostens customer relationships, falsely asserted that Visant and its wholly-owned subsidiary, Jostens, were teetering on the edge of bankruptcy and further claimed that the 'commission models, pensions, buyouts and the like could all be wiped out.'" *Id.* at ¶ 19. Defendants sent this e-mail within 48 hours after the resignation of Jostens' president. "[T]he false and defamatory statements were calculated to incite fear and panic among Jostens' independent sales representatives, to tortiously interfere with Jostens' contractual relationships and prospective economic advantage with its independent sales representatives and customers, and to injure Jostens and Visant in their business." *Id.*

The "doomsday analysis falsely stated," *inter alia*, "'that according to Moody's, Visant is currently carrying total debt of $2.175 billion.' In fact, the referenced Moody's report merely rated the $2.175 billion of debt available to Visant. It did not state and did not purport to state the amount of debt actually drawn down and carried by Visant or the amount Visant had paid down on the principal of that debt." *Id.* at ¶ 20. Other publicly available documents stated that "the amount of net debt (that is, net of cash on hand) actually carried by Visant was approximately $1.88 billion, 13% less than the falsely inflated $2.175 billion figure." *Id.* at ¶ 21.

The "doomsday analysis also materially misstated Visant's current debt ratio at 7.38 when, in fact, it was approximately 6.2. Again, the very same public documents to which the January 26, 2013 purported analysis referred made clear that Visant had a 21% cushion against its total leverage covenant of 7.75 during its tightest credit period in 2012." *Id.* at ¶ 22.

"The January 26, 2013 doomsday analysis used these untruthful statements of fact to falsely portray Visant as being on the brink of bankruptcy":

> 'It means that should EBITDA continue to decline at current rates, Visant may likely be in default of its debt covenant(s) by the end of the second quarter of 2013. Unless something changes between now and then to significantly increase revenue or reduce expenditures, it appears that

Visant will be insolvent.'

*Id.* at ¶ 23. "In sharp contrast to Defendants' false statements regarding bankruptcy, the Moody's report upon which they purported to rely stated that Visant's debt 'rating outlook is stable.'" *Id.* at ¶ 24. "The other ratings report referenced in Defendants' January 26, 2013 purported analysis, a Standard & Poor's Research Update, dated October 5, 2012, likewise contradicted Defendants' assertions." *Id.* at ¶ 25. Defendants also "ignored other publicly available information about the stable value that purchasers in the open market placed on Visant's public debt," such as information that Visant "was trading in the open market at an average of 92 to 93.50 versus 100 (or par)." *Id.* at ¶ 26.

The January 26, 2013 e-mail also "framed other misstatements of fact in the form of questions rife with mischaracterizations and errors that they advised the independent sales representatives to direct to Jostens' management." *Id.* at ¶ 27. The e-mail concluded by "advising the independent sales representatives in California that they 'are free to leave Jostens and seek employment elsewhere with no fear of reprisal.... It wished 'best of luck' to all of the independent sales representatives 'during this difficult time.'" *Id.* at ¶ 28.

"Precisely as Barrett and YB$^2$ intended, the January 26, 2013 communication disrupted Jostens' relationships with its independent sales representatives, who expressed fear and concern based upon the doomsday analysis for their livelihoods, their businesses and their customers." *Id.* at ¶ 29.

Jostens "promptly attempted to undo the damage caused by Defendants." *Id.* at ¶ 30. On January 30, 2013, Jostens sent a video made by its CFO and VP of Sales to its independent sales representatives; the video "corrected the false and defamatory statements published by Defendants and attempted to set the record straight." *Id.*

**II. Defendants' February 1, 2013 e-mail**

On February 1, 2013, Defendants sent an e-mail to "substantially the same group of key Jostens sales representatives" to whom the January 26, 2013 e-mail was sent, in

1 which "Defendants falsely proclaimed in bold face print: **'Visant is either already in**
2 **default on a portion of its debt or is perilously close to that event.'**" *Id.* at ¶ 31.
3 "The February 1, 2013 email falsely stated that 'Jostens current debt is $2.175 billion.'
4 It also falsely asserted a debt 'ratio of 7.37.'" *Id.* at ¶ 32.

The February 1, 2013 e-mail "was calculated to instill fear and panic in Jostens' independent sales representatives and to disrupt Jostens' relationships with this key constituency and its customers." *Id.* at ¶ 33. "Defendants ominously stated: 'I cannot speculate as to what will happen to Visant should they currently be in technical default of their debt or if they get to the place soon. All I know ... is that whatever happens to a company when it violates a debt covenant, it is not pleasant. And it can be devastating.'" *Id.*

The February 1, 2013 e-mail concluded with "a pitch for Jostens' independent sales representatives to consider joining YB$^2$: 'In all seriousness, ask yourselves, 'Have the recent actions of my company appear to have been those of a company on sound or shaky financial ground?' PS: If you wonder, our company is doing **great**. And as soon as I pay off my Visa for those pizzas I bought for a school last week, our debt ratio will be zero." *Id.* at ¶ 34.

"The February 1, 2013 e-mail has damaged Visant and Jostens precisely as Defendants intended. The false and defamatory misstatements of fact have disrupted the Jostens' relationships with its independent sales representatives and customers and damaged Visant's and Jostens' reputations and goodwill." *Id.* at ¶ 35.

**III.  Kelly Craig's resignation from Jostens and subsequent affiliation with YB$^2$**

"[Kelly] Craig served as a Jostens independent sales representative ... from 2003 until June 2012, when he breached [his Sales Representative Agreement] to join YB$^2$." *Id.* at ¶ 38. "Craig's Sales Representative Agreement contained a strict notice of non-renewal provision necessary to protect Jostens' customer relationships." *Id.* at ¶ 39.

On or about June 3, 2012, in the middle of the 2012 term, Craig sent an email to his Jostens Regional Manager, informing the manager that he was "resigning" from his

sales representative position "effective immediately" because "soul searching" revealed that his future was not with Jostens. *Id.* at ¶ 42. "By purporting to terminate the Sales Representative Agreement without notice on June 3, 2012, Craig breached the agreement." *Id.*

"Jostens has learned that Craig breached his Sales Representative Agreement in order to sell competing yearbooks on behalf of YB$^2$ with Barrett. Defendants induced Craig to violate his Sales Representative Agreement in order to benefit themselves and to cause financial harm to Jostens." *Id.* at ¶ 43.

At the time Defendants induced Craig to breach the agreement, Defendants "were aware of the terms of Craig's Sales Representative Agreement" and knew that "Craig's departure from Jostens on or around the end of the school year, without proper notice to Jostens, would seriously harm Jostens by compromising its ability to assign new sales representatives to Craig's Jostens customer accounts before those customers left for the summer break and to renew the accounts for a next school year." *Id.* at ¶ 45.

Shortly after Craig left Jostens, Defendants met with Jostens' customers serviced by Craig and attempted to "convince those customers to terminate their School Publications Agreements and/or not renew their existing agreements with Jostens and, instead, to purchase yearbook products and services from YB$^2$." *Id.* at ¶ 46.

"Defendants' actions were calculating, manipulative, and designed to damage Jostens, and to benefit Defendants personally. As a direct and proximate result of Defendants' actions, certain of the Jostens' customers with whom Craig was given an opportunity to work as a Jostens independent sales representative have terminated their School Publication Agreements and/or not renewed their agreements with Jostens and have instead entered into agreements with Defendants." *Id.* at 46-47.

The Complaint asserts the following claims for relief against both Defendants: (1) defamation; (2) trade libel; (3) unfair business acts, practices and/or conduct in violation of California Business and Professions Code § 17200, *et seq.*; (4) intentional interference with contractual relationships; and (5) intentional interference with

prospective economic advantage.[2] The Complaint asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs request preliminary and permanent injunctive relief; compensatory, punitive and exemplary damages; restitution and disgorgement of unlawful revenues; and attorneys' fees and costs.

## DISCUSSION

The Court construes Barrett's filing both as a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)[3] and a motion to strike the Complaint pursuant to California's anti-SLAPP statute (Cal. Code Civ. P. § 425.16). *See Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe *pro se* pleadings liberally."). Attached to his motion, Barrett submits copies of the January 26 and February 1, 2013 e-mails. (ECF No. 8 at 7-22).

**I. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff's "grounds" to relief must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual

---

[2]Plaintiffs Visant and Jostens bring claims 1-3. Only Plaintiff Jostens brings claims 4 and 5.

[3]Although Barrett does not mention Federal Rule of Civil Procedure 12(b)(6) in his motion, he does move "the court to dismiss the plaintiff's claim for damages resulting from allegedly defamatory statements made by me based on the plaintiff's failure to make a claim for which relief can be granted. The plaintiff makes no offer of proof that there was any defamation, libel, slander nor were there any resulting damages." (ECF No. 8 at 2).

allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

### A. Claim 1: Defamation

Barrett contends that the Complaint fails to state a claim for defamation. Barrett does not dispute sending the January 26 and February 1, 2013 e-mails, but contends that the e-mails contain only statements of opinion and are therefore protected under the First Amendment. Barrett asserts that he was merely opining about "hypothetical scenarios" for the future of Visant and Jostens based upon his assessment of publically available information issued by Moody's and Standard & Poor's. (ECF No. 8 at 4). Barrett contends that, even if his statements were false and defamatory, Jostens and Visant are public figures and have failed to adequately allege that he acted with "actual malice."

Plaintiffs contend that the Complaint adequately alleges facts to support a claim for defamation. Plaintiffs assert that certain statements within Barrett's e-mails were false, and that Plaintiffs suffered and continue to suffer damages as a result of those false statements. Plaintiffs contend that Barrett's e-mails rise above mere "opinion," and contain false and defamatory statements of fact about private figures – speech for which "actual malice" need not be proven. Plaintiffs contend that, even if Jostens and/or Visant are public figures, the factual allegations of the Complaint satisfy their burden of demonstrating "actual malice."

To prevail on a defamation claim under California law, a plaintiff must prove (1)

a publication[4] that is (2) false, (3) defamatory, and (4) unprivileged[5], and that (5) has a natural tendency to injure or that causes special damage. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). Public figures must also prove actual malice in order to recover on defamation claims. *See New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964). Libel, a form of defamation, "is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45; *see also Barnes-Hind, Ind. v. Superior Court*, 181 Cal. App. 3d 377, 382 (1986) ("A corporation can be libeled by statements which injure its business reputation.").

### 1. False statements of fact

"Under California law, recovery for defamation may be had only for false statements of fact. Statements of opinion are not actionable." *Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 783 (9th Cir. 1980). Whether allegedly defamatory statements constitute opinion or fact is a question of law. *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 971 (1993). "The court examines the communication in light of the *context* in which it was published. The communication's meaning must be considered in reference to relevant factors, such as the occasion of the utterance, the persons addressed, the purpose to be served, and 'all of the circumstances attending the publication.'" *Id.* at 970 (quoting *Polygram Records, Inc. v. Superior Court*, 170 Cal. App. 3d 543, 555 (1985)). "The key is not parsing whether a published statement is fact or opinion, but 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.'" *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 701 (quoting

---
[4] Barrett does not dispute that he published the January 26 and February 1, 2013 e-mails.

[5] Plaintiffs allege that the allegedly defamatory statements in the January 26 and February 1, 2013 e-mails were "unprivileged." (ECF No. 1 at ¶ 49). Defendants have not disputed this allegation, nor have they asserted any privilege related to the allegedly defamatory statements.

*Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385 (2004)).

The Complaint alleges a defamation claim predicated upon the following statements, *inter alia*, found in Barrett's January 26 and February 1, 2013 e-mails: (1) "Visant is either already in default on a portion of its debt or is perilously close to that event"; (2) "[A]ccording to Moody's and Standard and Poor's, the corporation is at serious risk to default on at least a portion of [its] debt"; (3) [A]ccording to Moody's, Visant is currently carrying total debt of $2.175 billion"; (4) "The reality is that Visant is in debt by over $2 billion"; (5) "Unless something changes between now and [the second quarter of 2013] to significantly increase revenue or reduce expenditures, it appears that Visant will be insolvent"; (6) "How can you [members of Josens' management], as part of a company on the verge of bankruptcy, guarantee any of what you are saying?"; and (7) "Visant may likely be in default of its debt covenant(s) by the end of the second quarter of 2013." *See generally* ECF No. 1; *see also* ECF No. 8 at 7-22 (copies of the January 26 and February 1, 2013 e-mails).

The Complaint alleges that Barrett's statements about Visant's debt, which cited to the Moody's report, were false: "In fact, the referenced Moody's report merely rated the $2.175 billion of debt *available* to Visant. It did not state and did not purport to state the amount of debt actually drawn down and carried by Visant or the amount Visant had paid down on the principal of that debt.... As other publicly available documents made clear, the amount of net debt (that is, cash on hand) actually carried by Visant was approximately $1.88 billion, 13% less than the falsely inflated $2.175 billion figure." (ECF No. 1 at ¶ 20). The Complaint alleges: "In sharp contrast to Defendants' false statements regarding bankruptcy, the Moody's report upon which they purported to rely stated that Visant's debt 'rating outlook is stable.'" *Id.* ¶ 24. The Complaint alleges that Barrett's statements based upon the Standard & Poor's Research Update were also false: "Contrary to Defendants' conclusions that Visant was at serious risk of defaulting on its debt obligations, Standard & Poor's concluded: 'We believe Visant has 'adequate' sources of liquidity (based on our current criteria) to more than

cover its needs over the next 12 to 18 months...." *Id.* ¶ 25. The Complaint alleges that "Defendants ignored other publicly available information about the stable value that purchasers in the open market placed on Visant's public debt." *Id.* ¶ 26. The Complaint alleges that Barrett, a former employee of Defendants, sought to portray Visant and Jostens in a negative and false light in order to recruit existing Jostens sales representatives to defect and join YB[2], Barrett's new company.

Based upon these allegations and the plain language of Barrett's e-mails, the Court finds that a reasonable fact finder could conclude that Barrett's e-mails declared or implied provably false statements of fact regarding the financial health and stability of Visant and Jostens. *See Overstock.com, Inc.*, 151 Cal. App. 4th at 701. Even though many of Barrett's statements were qualified with language such as, "it appears," "in my research today," "if my numbers are accurate," "it is my understanding," and "unless something changes," (ECF No. 8 at 8-12) "statements ... do not attain constitutional protection simply because they are sprinkled with words to the effect that something does or not 'appear' to be thus and so; or because they are framed as being 'in our opinion' or as a matter of 'concern.'" *Overstock.com, Inc.*, 151 Cal. App. 4th at 703. Nor will "couching an assertion of a defamatory act in cautionary language, such as 'apparently' or 'some sources say' or even putting it in the form of a question, necessarily defuse[] the impression that the speaker is communicating an actual fact." *Weller v. American Broad. Co., Inc.*, 232 Cal. App. 3d 991, 1004 (1991). "Even where the speaker states facts upon which he or she bases an opinion, if the facts are incorrect or incomplete, or if the speaker's assessment of them is erroneous, the statement can still imply an actionable statement." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990).

### 2. Defamatory statements / Special damages

Barrett also asserts that Plaintiffs "have made no attempt to even identify how much they were damaged, what those specific damages entail, or how they arrived at that arbitrary number [of $75,000, as alleged in the Complaint]." (ECF No. 15 at 19).

1 Plaintiffs contend that they have adequately alleged a claim for libel per se – a form of
2 defamation requiring no proof of special damages.

3 "A statement that is defamatory without the need for explanatory matter such as
4 an inducement, innuendo or other extrinsic fact, constitutes 'a libel on its face,'" or libel
5 per se. *Overstock.com, Inc.*, 151 Cal. App. 4th at 700 (quoting Cal. Code Civ. P. § 45a);
6 *see also Barnes-Hind, Ind.*, 181 Cal. App 3d at 386 ("If ... a reader would perceive a
7 defamatory meaning without extrinsic aid beyond his or her own intelligence and
8 common sense, then under section 45a ... there is libel per se.). Where a plaintiff
9 adequately alleges and proves a libel per se claim, she need not prove special damages;
10 rather, damage to plaintiff's reputation is presumed. *See Barnes-Hind, Ind.*, 181 Cal.
11 App. 3d at 382. "Perhaps the clearest example of libel per se is an accusation of a
12 crime." *Id.* at 385. "However, 'it is not necessary that the publication charge the
13 commission of a crime; it is sufficient if it so reflect's on the person's integrity as to
14 bring him or her into disrepute.'" *Medifast, Inc. v. Minkow*, 10-CV-382 JLS BGS, 2011
15 WL 1157625, at *9 (S.D. Cal. Mar. 29, 2011) (quoting 5 B.E. Witkin, Summary of
16 California Law, Torts § 543 (10th ed. 2005)). "The courts have manifested liberality,
17 at least at the pleading stage, in finding libel per se. Thus it has been said to be error
18 for a court to rule that a publication cannot be defamatory on its face when by any
19 reasonable interpretation the language is susceptible of a defamatory meaning."
20 *Barnes-Hind, Ind.*, 181 Cal. App. 3d at 385 (quotation omitted).

21 In this case, Barrett's allegedly false statements call into question the financial
22 health, stability, and business reputation of Visant and Jostens. The Court finds that
23 these statements are susceptible to a reasonable interpretation that would, without any
24 additional explanation or extrinsic facts, expose Visant and Jostens to "contempt,
25 ridicule, or obloquy, or ... cause[] [Visant and Jostens] to be shunned or avoided, or ...
26 [would] ha[ve] a tendency to injure [their] occupation." *Id.*; *see also id.* at 382 ("A
27 corporation can be libeled by statements which injure its business reputation.");
28 *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999) ("In evaluating whether

language used is defamatory, courts look not so much [to the allegedly libelous statement's] effect when subjected to the critical analysis of a mind trained in the law, but [to] the natural and probable effect upon the mind of the average reader.") (quotation and citations omitted)). Accordingly, as the defamation claim is presently pled, damage to Plaintiffs' reputation is presumed. *See DiGiorgio Fruit Corp v. AFL-CIO*, 215 Cal. App. 2d 560, 572 (1963) ("[I]f the publication reasonably and naturally has the effect of bringing the business of the corporation into public contempt, and of making it odious in the estimation of those with whom it has business dealing or connections, then the law will presume that the publication was actionable per se without either pleading [or] proof of special damage. It will be inferred that the publication did injure it in a business way, for it is only in a business way, resulting in pecuniary loss, that a corporation can be damaged by an alleged libelous publication." (quotation omitted)).

### 3. Public figures

Barrett contends that Jostens and Visant are public figures because "the financial solvency of Jostens/Visant is a matter of public interest." (ECF No. 15 at 15). Barrett contends that Plaintiffs cannot show "actual malice" in this case because "it is clear from all available evidence and even the contents of the email itself that every effort was made [by Barrett] to be clear and accurate." *Id.* Plaintiffs contend that Visant and Jostens are not public figures, but that, even if they are, Plaintiffs have adequately alleged the existence of "actual malice."

Public figures[6] must prove actual malice in order to recover on defamation claims. *See Sullivan*, 376 U.S. at 279-80. Actual malice means that the defamatory statement was made with "knowledge that it was false or with reckless disregard of

---

[6]There are two types of public figures: (1) "all purpose" public figures, who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974); and (2) a "limited purpose" public figure, who has "voluntarily inject[ed] himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351. Generally, those who attain public figure status "have assumed roles of especial prominence in the affairs of society." *Id.* at 345.

whether it was false or not." *Id.* Reckless disregard, in turn, means that the publisher "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

While the January 26, 2013 e-mail stated, "I am not a financial expert," it also contained several allegedly false and defamatory statements about the financial health of Jostens and Visant that were purportedly based upon Barrett's assessment of detailed financial reports from Moody's and Standard & Poor's. Assuming, without deciding, that Plaintiffs are public figures (either "limited" or "all purpose"), the Court finds that Plaintiffs have adequately alleged facts to plausibly conclude that the January 26 and February 1, 2013 e-mails were sent with "reckless disregard of whether [statements within those e-mails were] false or not." *Sullivan*, 376 U.S. at 279-80.

Viewing the non-conclusory allegations of the Complaint as true, the Court concludes that Plaintiffs have stated a plausible claim for defamation against Barrett. The motion to dismiss Plaintiffs' claim for defamation is denied.

**B.   Claim 2: Trade libel**

Trade libel is defined as "an intentional disparagement of the quality of property, which results in pecuniary damage...." *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964). Thus, a cause of action for trade libel requires at a minimum: (1) a publication; (2) which induces others not to deal with plaintiff; and (3) special damages. *Nichols v. Great American Insurance Companies*, 169 Cal. App. 3d 766, 773 (1985). "To succeed on a claim for trade libel, a plaintiff must plead and prove special damages in the form of pecuniary loss." *Luxpro Corp. v. Apple Inc.*, C 10-03058 JSW, 2011 WL 1086027, at *14 (N.D. Cal. Mar. 24, 2011); *see also* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").

The Court finds that the Complaint adequately alleges the publication of statements by Barrett which induced others not to deal with Plaintiffs. However, the Complaint's allegations of damages are simply that "Defendants' false statements have caused – and will continue to cause if allowed to continue – harm to Visant's and

Jostens' business. Defendants' false statements have interfered with Jostens' relationship with its independent sales representatives and have disrupted Jostens' business." (ECF No. 1 at ¶ 57). Plaintiffs have failed to sufficiently identify special damages in the form of a pecuniary loss. *See Luxpro Corp.*, 2011 WL 1086027, at *14 ("Although a plaintiff does not need to plead a specific dollar amount, the plaintiff should allege an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication." (quotation omitted)). Accordingly, the Court grants Barrett's motion to dismiss the trade libel claim without prejudice. *See, e.g., Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) (finding a claim for special damages from "the loss of revenue from wholesale and retail sales of [plaintiff]" inadequate).

In conclusion, the motion to dismiss Plaintiff's trade libel claim is granted without prejudice. The motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is otherwise denied.[7]

//

//

//

---

[7]Barrett does not move for dismissal of claims three through five of the Complaint for failure to state a claim. However, in his reply brief, Barrett challenges the validity of Craig's employment contract with Jostens – the contract serving as the basis for claims four and five, for intentional interference with contractual relations and interference with prospective economic advantage. *See* ECF No. 15 at 16 (contending that "[t]he automatic renewal clause in the Jostens representative agreement represents a de facto non-competition clause and is therefore illegal under California law"). Because Barrett raised this argument for the first time in his reply brief and Plaintiffs have not had an opportunity to respond, the Court will not consider the validity of Craig's employment contract at this time. *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (noting that courts generally decline to consider arguments raised for the first time in a reply brief); *United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996) (noting that considering arguments raised for first time in reply brief deprives opposing party of adequate opportunity to respond); *United States v. Boyce*, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001) ("This argument was not presented in their moving papers and therefore should not be considered now, as it is improper for a party to raise a new argument in a reply brief.").

## II. Motion to Strike

California Code of Civil Procedure section 425.16 ("section 425.16") permits a defendant to strike a lawsuit if the alleged bad acts arose from his or her exercise of free speech "in connection with a public issue" and if the plaintiff cannot show a probability of success on his or her claims. Cal. Code Civ. P. § 425.16(b)(1); *see also Thomas v. Fry's Elecs., Inc.*, 400 F. 3d 1206, 1206 (9th Cir. 2005) (explaining that California anti-SLAPP motions to strike are available to litigants proceeding in federal court). A defendant who brings a section 425.16 motion has the initial burden of presenting a prima facie case that the suit "arises from any act of [defendant] in furtherance of [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue." *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 820 (1994) (quoting Cal. Code Civ. P. § 425.16(b)). If the defendant meets this burden, the burden shifts to the plaintiff to establish "a probability that plaintiff will prevail on the claim." *Wilcox*, 27 Cal. App. 4th at 823.

### A. Claim 1: Defamation

Barrett contends that the Court should strike Plaintiffs' claim for defamation pursuant to section 425.16 on the grounds that Plaintiffs have no likelihood of prevailing. Barrett requests $2,000.00 in attorneys' fees – the amount purportedly paid to an attorney to review his motion to dismiss.

Plaintiffs contend that section 425.16 does not apply to this lawsuit. Plaintiffs assert that the statute only protects speech made in connection with a public issue, unlike the speech at issue in this case. Assuming the statute does apply, Plaintiffs contend that Barrett's motion should be denied because Plaintiffs have established a probability of prevailing on their claim for defamation.

#### 1. In connection with a public issue

Under section 425.16, an act in furtherance of a person's right of petition or free speech includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. P. § 425.16(e).

In this case, the Court finds that the financial stability of Visant and Jostens – major corporations selling products to schools and universities nationwide – can constitute a "public issue or an issue of public interest" pursuant to § 425.16(e). *Id.*; *see also Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000) (pursuant to section 425.16, "matters of public interest ... include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals"). Because Plaintiffs bring this action in response to Barrett's statements regarding that issue of public interest, Barrett has satisfied his initial burden of establishing that this action arose from an act in furtherance of his right of free speech. *See World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.*, 172 Cal. App. 4th 1561, 1568 (2009) (in determining whether the "arising from" requirement is met, "the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech.").

### 2. Probability of prevailing

To show a probability of prevailing, "the plaintiff must demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilcox*, 27 Cal. App. 4th at 824. The determination is made on the basis of the pleadings, as well as supporting and opposing affidavits stating the facts upon which the liability or defense is based. Cal. Code Civ. P. § 425.16(b)(2). Pleadings by themselves are inadequate to demonstrate a prima facie case – the plaintiff must submit

admissible evidence to show a probability of prevailing at trial. *Evans v. Unkow*, 38 Cal. App. 4th 1490, 1497-98 (1995). "[T]he plaintiff's burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP." *Overstock.com, Inc.*, 151 Cal. App. 4th at 699-700 (quoting *Navellier v. Sletten*, 29 Cal. App. 4th 82, 89 (2002)).

As discussed above, the Court finds that the allegations of the Complaint, taken as true, are plausibly suggestive of a defamation claim entitling Plaintiffs to relief. *See supra* Part I.A. In an effort to satisfy their heightened burden of showing a "probability of prevailing," Plaintiffs submit the declaration of Paul B. Carousso, Senior Vice President and Chief Financial Officer of Visant (ECF No. 12-1), along with copies of Barrett's January 26 and February 1, 2013 e-mails (*Id.* at 8-14, Exhs. A-B), copies of the Standard & Poor's and Moody's reports referenced in Barrett's e-mails (*Id.* at 15-28, Exhs. C-D), a transcript of Visant's November 9, 2012 conference call (*Id.* at 29-35, Exh. E), and a copy of a December 7, 2012 Moody's credit opinion of Visant (*Id.* at 36-40, Exh. F).[8]

In his declaration, Carousso states the January 26 and February 1, 2013 statements that Visant is "perilously close to" or "in serious risk of" default "are incorrect." *Id.* at 2. Carousso states that "Visant is not now and has not been in default, or at risk of default, on any portion of its debt. Further, neither the Moody's nor the Standard & Poor's report states that Visant is at serious risk to default on any of its debt." *Id.* Carousso states that, "as of the date of Defendants' email, Visant was

---

[8] Plaintiffs also submit the declarations of Jason Simpson, Chief Financial Officer of Jostens, and Jonathon N. Fazzola, counsel for Plaintiffs. (ECF Nos. 12-2, 12-3). These declarations and the attached exhibits, several of which are copies of e-mails purportedly written by Barrett to former Jostens independent sales representatives, relate to Plaintiffs' third through fifth claims for unfair business practices and intentional interference with contractual relations and prospective economic advantage.

carrying approximately $1.845 billion in total net debt, which was roughly 15 percent less than the figure Defendants attribute to Moody's." *Id.* at 4. Carousso states: "As of January 26, 2013, and at no other time, has Visant been on the verge of bankruptcy." *Id.* at 5. Carousso states that the 7.38 debt ratio figure for Visant's debt covenants referenced in the January 26, 2013 e-mail "is incorrect," and that "the correct figure for Visant's debt ratio for purposes of the debt covenant was 6.18 on December 29, 2012."[9] *Id.* at 5.

After review of these sworn statements, the copies of Barrett's e-mails, and the reports from Standard & Poor's and Moody's, the Court finds that this evidence, taken as true, substantially corroborates the factual allegations of the Complaint. Barrett submits no additional evidence in opposition. Based upon this record, the Court finds that Plaintiffs' claim for defamation has at least "minimal merit," and concludes that Plaintiffs have satisfied their burden of establishing a "probability of prevailing" pursuant to Cal. Code Civ. P. § 425.16. *See Overstock.com, Inc.*, 151 Cal. App. 4th at 699-700.

Barrett's motion to strike Plaintiffs' defamation claim pursuant to section 425.16 is denied.

### B. Claim 2: Trade libel

The Court has dismissed Plaintiffs' trade libel claim without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). *See supra* Part I.B. However, the Court finds that striking the Complaint at this stage of the proceedings would be inconsistent with Rule 15's liberal amendment policy. *See Verizon Del., Inc. v. Covad Communs. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[G]ranting a defendant's anti-SLAPP

---

[9] Carousso also states: "I have also been advised that Defendants refer to a December 7, 2012 Moody's credit opinion that references a debt ratio of 7.3 as support for their calculation of Visant's debt ratio for debt covenant purposes at 7.38. As the Moody's credit opinion makes clear, however, Moody's is not calculating a debt ratio for purposes of debt covenant calculations. The fact that debt ratio for purposes of debt covenant compliance is calculated differently than the standard rating agency calculations of debt ratios is clear on the face of the Standard & Poor's report....." (ECF No. 12-1 at 5-6).

motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."). Accordingly, the Court does not reach Barrett's motion to strike as to the trade libel claim at this time. Barrett may raise his anti-SLAPP arguments in opposition to any amended complaint. *See id.* ("If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants.").

Barrett's motion to strike pursuant to California Civil Code section 425.16 is denied. Barrett's request for attorneys' fees is similarly denied. *See* Cal. Code Civ. P. § 425.15(c) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.").

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Bret Barrett (ECF No. 8) is **GRANTED IN PART**. The Complaint's second claim for trade libel is **DISMISSED** as to Defendant Bret Barrett without prejudice. The Motion to Dismiss (*Id.*) is **DENIED** in all other respects. Any motion for leave to file an amended complaint shall be filed no later than thirty (30) days from the date of this Order.

DATED: July 9, 2013

**WILLIAM Q. HAYES**
United States District Judge